Before STATE INDUSTRIAL COMMISSION.

In the Matter of the Claim of MICHAEL WOZNEAK, for Compensation under the Workmen's Compensation Law, *v.* BUFFALO GAS COMPANY, Employer, and TRAVELERS INSURANCE COMPANY, Insurance Carrier.

Third Department, November 15, 1916.

Workmen's Compensation Law — award for injury not causing death to be paid in installments — death of person not injured before total award is paid — right to award does not survive or vest in decedent's personal representatives or dependents — Workmen's Compensation Law construed — distinction between awards for injuries not causing death and those having that result.

An award for the loss of an eye, made to the person injured, which consists of a certain number of bi-weekly payments for a specified number of weeks, abates as to unpaid installments not yet due, where the person injured dies from causes other than the injury, and hence those dependent upon him are not entitled to receive the balance of the award.

Under the statute the Industrial Commission has no power to make the aggregate sum of such bi-weekly payments due at the time of the award so as to create a vested right in future payments which survives the claimant's death.

Although section 25 of the statute provides that the payments made under certain conditions be commuted to one or more lump-sum payments, such commutation involves a reduction in the total amount of the award as determined by its present value based upon the probabilities of continuing life.

The statute makes a radical distinction between awards made to a person injured and awards made to the dependents of a person where the injury results in death.

KELLOGG, P. J., and LYON, J., dissented, with opinion.

CERTIFICATION by the State Industrial Commission to the Appellate Division under section 23 of the Workmen's Compensation Law (Consol. Laws, chap. 67; Laws of 1914, chap. 41)* of the following question: "Did the award to Michael Wozneak constitute a vested interest in him and upon his death the right of collection of the portion of said award remaining unpaid pass to his personal representatives, or did the said award terminate upon the death of the said Michael Wozneak?"

*Egburt E. Woodbury*, Attorney-General [*E. C. Aiken*, Deputy Attorney-General, of counsel], for the claimant.

*Amos H. Stephens* [*E. Clyde Sherwood* and *William B. Davis*, of counsel], for employer and insurance carrier.

WOODWARD, J.:

The minutes of the State Industrial Commission and the record show that for an injury which happened on November 19, 1914, the claimant, Michael Wozneak, was awarded compensation on or about the 26th day of July, 1915, for 128 weeks, credit being given for twenty-five weeks of such compensation already paid, on account of the loss of an eye while in the employ of the Buffalo Gas Company. The minutes recite: "Present payment, 9 weeks, $60.57, and 47 bi-weeklies of $13.46." That is, there was no award of the total amount of the 128 weeks, but an adjudication that because of the loss of the eye the claimant was entitled to the sum of six dollars and seventy-three cents per week for a period of 128 weeks. Twenty-five weeks had been paid at the time of the adjudication; nine weeks were payable presently, and the remainder was to be paid in forty-seven bi-weekly payments. This was in harmony with the provisions of section 25 of the Workmen's Compensation Law (Consol. Laws, chap. 67; Laws of 1914, chap. 41), which provides that the compensation "shall be payable periodically, in accordance with the method of payment of the

* Since amd. by Laws of 1916, chap. 622.— [REP.

wages of the employee at the time of his injury or death, and shall be so provided for in any award;" with a further provision that the Commission, whenever it deems it advisable, "may commute such periodical payments to one or more lump sum payments, provided the same shall be in the interest of justice." (See, also, Laws of 1915, chap. 167, amdg. said § 25.)

It is true that the Commission makes some recitals which tend to show that there was an award of $861.44, and that of this amount $693.19 was due at the time of making the award, but the minutes of the Commission do not show this, nor is there any power vested in the Commission to make such an award. The statute (§ 15, subd. 3) for permanent partial disability provides that for the loss of an eye the compensation shall be "sixty-six and two-thirds per centum of the average weekly wages and shall be paid to the employee for the period named [128 weeks] in the schedule as follows," and section 25 provides that this compensation shall be paid, not in one sum, but periodically. The adjudication is that there has been a loss of an eye and that six dollars and seventy-three cents is the amount of compensation which is to be paid per week, at periods fixed by the award, during a period of 128 weeks, and there is no justification in the statute for the recitals of the Commission that any sums were due under such award, except such as might have accrued at the dates mentioned. A sum is not due until the time for its payment has arrived, and an award which extends the payments over a period of one hundred and three weeks from the date of the award does not make the aggregate sum of such bi-weekly payments due either at the time of making the award, or at the subsequent death of the claimant within the period of such payments. It is true that section 25 provides that these payments may, under conditions named, be commuted to one or more lump sum payments, but no attempt was made to make such commutation, and if made it would have to take into consideration the shortened time in which such payments were to be made, for we understand by authority to commute a power to anticipate the payments and to permit the insurance carrier to discharge the obligation for a less present sum than the ultimate payments. (8 Cyc. 398.) This view is supported by the provisions of section 27 of the law, which provides that "if

an award under this chapter requires payment of compensation by an employer or an insurance corporation in periodical payments, and the nature of the injury makes it possible to compute the present value of all future payments *with due regard for life contingencies,* the Commission may, in its discretion, at any time, compute and permit or require to be paid into the State fund *an amount equal to the present value* of all unpaid compensation for which liability exists, in trust; and thereupon such employer or insurance corporation shall be discharged from any further liability under such award and payment of the same shall be assumed by the State fund." That is, the insurance carrier is permitted to pay the present value of all unpaid sums into the State treasury and to be relieved of his further obligations, where it is "possible to compute the present value of all future payments with due regard for life contingencies," which means, of course, a calculation based upon the probabilities of life, as fixed by recognized tables, and an adjustment of the present value of such award.

The above language indicates clearly that the Legislature not only did not understand that the award became vested so as to be due at the time of the death of the claimant, or at the date of the award, but that the award was of a certain sum per week during the lifetime of the claimant if he died before the expiration of the time fixed by the statute for the compensation to continue. This is made entirely certain by the provisions of section 26 of the law, which provides that in the event of a default "in the payment of an installment of compensation *and the whole amount of such compensation be not due,* the Commission may, *if the present value of such compensation be computable,* declare the whole amount thereof due, and recover the amount thereof with the added penalty of fifty per centum, as provided by this section." (See, also, Laws of 1915, chap. 167, amdg. said § 26.) The award has a certain present value, taking into consideration the life contingencies; it is definite and certain as to the weekly allowance, and the number of weeks, subject only to the life contingencies, and if the Legislature had understood that the award became vested, so that it should pass to the representatives of the deceased claimant, who died without reference to the accident,

it would not have required that in computing the present value of all future payments the life contingencies should be taken into consideration.

The claimant in the present case died on the 9th day of December, 1915, while a considerable portion of the time covered by the award remained to be filled. It is conceded that the death resulted from natural causes, entirely apart from the accident for which the award was made, and the State Industrial Commission has held, and now submits the question of law to this court, that "said award was a vested interest in the said Michael Wozneak and that the same did not terminate at his death, but passed to the personal representatives of his estate and that the said employer and insurance carrier be and they hereby are instructed to pay the balance of the said award to the representatives of the estate of the said Michael Wozneak, in accordance with the terms of the said award." The insurance carrier, upon the submission of this question, urges that the award terminated with the death of the claimant, and, from what we have already said, it seems clear to us that this contention is sound. The statute, making a radical innovation upon the common law, has provided a system of compensation for workmen in certain classifications of labor, and not only is it impossible to conceive of compensation after death in the industrial sense of that word, but the statute itself makes the distinction between the compensation which is to be paid the employee for injuries sustained to his earning powers, and the benefits which are to flow to those who are dependent upon him in the event of death resulting from the injury (§ 16, as amd. by Laws of 1914, chap. 316), and provides distinctly who shall receive this benefit. (§ 16, as amd. *supra.*) That which would be compensation for the injured employee is to be known as a death benefit to the dependents pointed out by the statute if the accident results in death, and not only is there no provision for continuing the award made for compensation for the injuries, but the letter and spirit of the act are opposed to such a construction. It is a Workmen's Compensation Law, with an insurance provision for those dependent upon him in the event of the accident resulting in death; the workman himself is to be compensated

for his loss of earning power out of the industry which employs him, and as he would have no earning capacity after his death, due to natural causes, he could have no just claim for compensation beyond his life span. It is only when his death results from the injuries received in the industry that there is any equitable reason why the industry should be called upon to pay benefits to those dependent upon him, and this distinction is found throughout the statute, and it is specially provided in section 33 that "compensation and benefits shall be paid only to employees or their dependents." That is, compensation shall be paid only to employees and benefits shall be paid only to dependents of such employees, and to make certain that the act shall be confined to those who are specially within the contemplation of the Legislature, it is provided in section 33 that "claims for compensation or benefits due under this chapter shall not be assigned, released or commuted except as provided by this chapter, and shall be exempt from all claims of creditors and from levy, execution and attachment or other remedy for recovery or collection of a debt, which exemption may not be waived."

If it could be held under any possible theory that the compensation awarded to the claimant was translated by his natural death into a benefit, the statute would still require that it be paid, not to the representatives of the estate of the deceased, thus to become subject to his debts (for a personal exemption clearly would not extend beyond the life of the claimant), but to the dependents named in the statute, for it is provided that "compensation and benefits shall be paid only to employees or their dependents" (§ 33), and in these hands, and these only, would the exemptions provided in the act prevail.

That the award made to the claimant in this proceeding could not have been vested absolutely in the claimant is evident from the provisions of section 22 of the law, which provides that the Commission, on its own motion or upon application by any interested party, may, on the ground of a change in conditions, "review any award, and, on such review, may make an award ending, diminishing or increasing the compensation previously awarded, subject to the maximum or

minimum provided in this chapter, and shall state its conclusions of facts and rulings of law," etc. He had a right during his lifetime, and while the award remained unchanged, to receive the compensation fixed for the period limited by the statute, but with his death from natural causes he ceased to have any right to compensation, just as his contract of employment for a definite period would have been terminated by the same event if no accident had befallen him. The right to compensation was personal to himself as much under the statute as it was under his contract of employment; the former grew out of the latter.

We are clearly of the opinion that the right to compensation ceased upon the death of Michael Wozneak, and that the State Industrial Commission should be directed to conform the proceeding to this opinion.

All concurred, except KELLOGG, P. J., who dissented in opinion, in which LYON, J., concurred.

KELLOGG, P. J. (dissenting):

The compensation made by the award is for the "injuries sustained" as stated in section 2 of the law. Under section 14 in all cases the wages of the employees form a basis for the compensation. Under subdivision 3 of section 15 of the law, for permanent partial disabilities, the disability may or may not disable the employee from earning his usual wages. Nevertheless he receives the compensation for the injury he has sustained. The law was passed to make the employment stand its ordinary risks and to indemnify the injured workman. He cannot assign, release or commute the claim except as permitted by the law, and it is exempt from execution (§ 33); the compensation is payable periodically (§ 25). These provisions are not limitations upon the right of compensation, but are intended to safeguard the compensation so that it shall be of the most advantage to the injured employee. For the loss of an eye the employee receives sixty-six and two-thirds per centum of his average weekly wage for 128 weeks. This does not mean that the weekly payment is to make good to him the diminution in earnings for the week on account of the loss of the eye, because the eye is lost forever. The payment each week is not for the

injury sustained for that week, but the number of weeks is a convenient way of arranging payments in a manner which will do the most good to him and perhaps be the least burdensome to the employer. Under section 25, in the interest of justice, the Commission may direct that the award be paid in a lump sum rather than in installments. When the payments depend upon the contingency of life, section 27, in the discretion of the Commission, permits a commutation of the future payments with reference to such contingency. But no such provision is contained in section 25, and for that reason we may infer that the contingency of life does not enter into the award. By section 17, where the compensation is awarded to non-resident aliens, or to those about to become non-residents of the United States or Canada, the Commission directs payment of a lump sum equal to one-half of the regular payments, probably upon the theory that it is better for the party abroad, or going abroad, to receive one-half in a gross sum than to await the payments upon the installment plan, and perhaps for the further reason that as the party is a non-resident alien, the State cannot be prejudiced by the manner in which he uses his money. The compensation is for the loss of the eye, and the injured employee is to receive it whether his earning power is or is not lessened. I think the fair meaning of the law is that upon the award being made the employee has a vested interest, and the payments are to be made from time to time in the interest of the employee, the employer and the public.

It is said that the Commission may modify an award under section 22; but the modification is to be upon the ground of change in conditions only. It is difficult to see how a change in conditions can take place with reference to the specific injuries mentioned in subdivision 3 of section 15. If the compensation depends entirely upon the loss of earning power, it may be difficult to arrive at a lump sum, as the condition of the injured party from time to time may have a bearing upon that question, and the Commission has the power from time to time to increase or diminish the award. But for the loss of an eye the compensation cannot change or be varied from time to time. The amount to be paid is to continue for 128 weeks unless the Commission concludes that justice requires that it be paid in a

First Department, June, 1916. [Vol. 175.

lump sum. The fact that the amount to be paid in some cases depends upon the future, and upon the future act of the Commission, does not, therefore, control upon the question whether for the loss of an eye the award creates a vested interest. So far as the claimant is concerned the Legislature has fixed a price for an eye, and when the award is made it is a fixed obligation, and does not depend upon his continued life. In no event can he get any more; the employer should pay no less. If the injured party lives but a week after the award, it cannot be claimed that the payment of a very moderate sum for a week only is any just or fair compensation for the loss of an eye, while it can be seen that in the average case the payment of such sum for 128 weeks is a reasonable and fair compensation for the injury sustained. If it had been the intent to make the payment of the installments depend upon the life of the employee, there would have been such a provision in the law; it would not have been left to uncertain inference. In my judgment the answer should be that the employee had a vested interest in the award and the amount unpaid is payable to his representatives.

Lyon, J., concurred.

Question certified answered: The award is not a vested interest and the payments do not survive.